399 S.E.2d 42

**STATE of West Virginia**

v.

**Brigitte WICKLINE.**

**No. 19494.**

Supreme Court of Appeals of West Virginia.

Oct. 24, 1990.

James W. St. Clair, J. William St. Clair, St. Clair & Levine, Huntington, for Brigitte Wickline.

Roger W. Tompkins, Atty. Gen., Landon Brown, Asst. Atty. Gen., Charleston, for State of W.Va.

MILLER, Justice:

Brigitte Wickline was convicted by a jury in the Circuit Court of Wayne County of first degree murder without a recommendation of mercy. On appeal, the defendant's assignments of error are: (1) that she was not promptly presented before a magistrate; and (2) that she received ineffective assistance of counsel. We have reviewed the record and affirm the defendant's conviction.

## I.

In the early morning hours of June 25, 1988, the body of John Wickline, the defendant's husband, was found beneath a car located at the mobile home park where the defendant and the deceased lived in Wayne County. The state police arrived at the scene at approximately 3:45 a.m. and began investigating the crime.

Sometime before 5:00 a.m., Sergeant McBride of the Department of Public Safety began interviewing the defendant about the preceding evening's events. During the interview, the defendant disclosed that she had killed her husband. Sergeant McBride ceased the interview, read the defendant her *Miranda* rights,[1] and began taking a written statement. In this statement, the defendant acknowledged that she had orally confessed to Sergeant McBride, but contended that she did so because she was scared.

Upon completion of the written statement, Sergeant McBride asked Trooper Farley to talk to the defendant. The defendant once again orally confessed to the crime and told Trooper Farley "she didn't want to talk up there, that there were too many people milling around and that she wanted to go some place and talk specifi-

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

cally." [2] The police agreed to this request; however, they told her that they could not leave the crime scene until they had completed their investigation. Although the defendant was then instructed to remain in the police cruiser, Sergeant McBride testified at the suppression hearing that she was not under arrest.

At approximately 9:00 a.m., the police placed the defendant under formal arrest and drove her to the state police barracks in Wayne. The defendant began her second written statement at approximately 10:00 a.m. In this statement, the defendant admitted that she and her neighbors, Michael Moore and his wife, Doris Jean Moore, had planned to kill John Wickline because he physically abused the defendant repeatedly.

■ At the conclusion of the suppression hearing, the trial court ruled that the defendant's oral statement was spontaneous, that the defendant was not under arrest, and that the defendant was not subject to custodial interrogation; therefore, the oral confession was admissible. We agree with the trial court's ruling based on our holding in Syllabus Point 4 of *Wilhelm v. Whyte*, 161 W.Va. 67, 239 S.E.2d 735 (1977):

"'A spontaneous statement by a defendant made prior to any action by a police officer and before an accusation, arrest or any custodial interrogation is made or undertaken by the police may be admitted into evidence without the voluntariness thereof first having been determined in an *in camera* hearing.' Syllabus Point 1, *State v. Johnson*, [159] W.Va. [682], 226 S.E.2d 442 (1976) [*over-*

ruled on other grounds, *State ex rel. White v. Mohn*, 168 W.Va. 211, 283 S.E.2d 914 (1981)]."

■ The defendant challenges the admission of her second written statement given at approximately 10:00 a.m. at the police station.[3] The defendant asserts that she was not promptly presented before a magistrate in violation of W.Va.Code, 62–1–5 [4] and Rule 5(a) of the West Virginia Rules of Criminal Procedure.[5] Consequently, she contends that her second written statement should have been suppressed under Syllabus Point 1 of *State v. Guthrie*, 173 W.Va. 290, 315 S.E.2d 397 (1984):

"'The delay in taking a defendant to a magistrate may be a critical factor [in the totality of circumstances making a confession involuntary and hence inadmissible] where it appears that the primary purpose of the delay was to obtain a confession from the defendant.' Syllabus Point 6, *State v. Persinger*, [169 W.Va. 121], 286 S.E.2d 261 (1982), as amended."

■ In Syllabus Point 2 of *State v. Humphrey*, 177 W.Va. 264, 351 S.E.2d 613 (1986), we stated that the prompt presentment rule is triggered when an individual is either arrested or taken into police custody with sufficient probable cause to warrant an arrest:

"Our prompt presentment rule contained in W.Va.Code, 62–1–5, and Rule 5(a) of the West Virginia Rules of Criminal Procedure, is triggered when an accused is placed under arrest. Furthermore, once a defendant is in police custody with sufficient probable cause to war-

---

2. The second oral confession was not utilized at trial.

3. The trial court ruled the first written statement taken in the police cruiser inadmissible because the defendant had been given inadequate *Miranda* warnings.

4. W.Va.Code, 62–1–5, provides:
   "An officer making an arrest under a warrant issued upon a complaint, or any person making an arrest without a warrant for an offense committed in his presence, shall take the arrested person without unnecessary delay before a justice [magistrate] of the county in which the arrest is made. When a person

arrested without a warrant is brought before a justice [magistrate], a complaint shall be filed and a warrant issued forthwith. The officer executing the warrant shall make return thereof to the justice [magistrate] before whom the defendant is brought."

5. W.Va.R.Crim.P. 5(a) provides, in pertinent part: "An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before a magistrate within the county where the arrest is made."

rant an arrest, the prompt presentment rule is also triggered."

The delay between the time of the arrest or custodial interrogation and the giving of a confession is most critical for prompt presentment purposes because during this time period custodial confinement and interrogation can be used to attempt to produce a confession. *See State v. Worley,* 179 W.Va. 403, 414, 369 S.E.2d 706, 717, *cert. denied,* 488 U.S. 895, 109 S.Ct. 236, 102 L.Ed.2d 226 (1988). We explained the purpose of our prompt presentment statute, W.Va.Code, 62-1-5, and its counterpart in W.Va.R.Crim.P. 5(a) in *State v. Persinger,* 169 W.Va. 121, 134, 286 S.E.2d 261, 269-70 (1982):

"By statute, our mandated preliminary appearance before a magistrate serves other vital purposes in addition to informing the defendant of his right against self-incrimination and his right to counsel. The magistrate is required to 'in plain terms inform the defendant of the nature of the complaint against him.' W.Va.Code, 62-1-6. Moreover, the defendant must be informed 'if the offense is to be presented for indictment, of his right to have a preliminary hearing.' W.Va.Code, 62-1-6. The defendant at his initial appearance must be provided 'reasonable means to communicate with an attorney or with at least one relative or other person for the purpose of obtaining counsel or arranging bail.' W.Va.Code, 62-1-6. Finally, it is at this initial appearance that the defendant is entitled to obtain bail." (Footnote omitted).

We also recognized and identified in *State v. Persinger,* 169 W.Va. at 135-36, 286 S.E.2d at 270, *quoting Johnson v. State,* 282 Md. 314, 329, 384 A.2d 709, 717 (1978), a variety of situations where the State can justify the delay by showing its necessity:

" 'Examples of necessary delay might include those required: 1) to carry out reasonable routine administrative procedures such as recording, fingerprinting and photographing; 2) to determine whether a charging document should be

issued accusing the arrestee of a crime; 3) to verify the commission of the crimes specified in the charging document; 4) to obtain information likely to be a significant aid in averting harm to persons or loss to property of substantial value; 5) *to obtain relevant nontestimonial information likely to be significant in discovering the identity or location of other persons who may have been associated with the arrestee in the commission of the offense for which he was apprehended, or in preventing the loss, alteration or destruction of evidence relating to such crime.'* " (Footnote omitted; emphasis added).

Our initial inquiry, then, is when the defendant was placed under arrest. The State contends that the defendant was not arrested until after 9:00 a.m., when the state police completed their investigation of the crime scene and returned to the state police cruiser. As we have earlier indicated, the defendant had been interviewed around 5:00 a.m., had disclosed that she had participated in the homicide, and had been asked to wait in the police cruiser.

When the defendant orally confessed to the crime, the police had probable cause to arrest her. "[O]rdinarily once an accused confesses to a crime during custodial interrogation, the police will not let [her] leave freely[.]" *State v. Humphrey,* 177 W.Va. at 268, 351 S.E.2d at 617. In the words of *State v. Mays,* 172 W.Va. 486, 489, 307 S.E.2d 655, 658 (1983), we believe that the defendant was under *"de facto arrest"* once Sergeant McBride told her to remain in the police car. "To hold otherwise would allow the police to avoid the prompt presentment requirement by simply delaying the formal arrest. We do not believe the prompt presentment requirement can be skirted so easily." *State v. Humphrey,* 177 W.Va. at 268-69, 351 S.E.2d at 617-18. We spoke to the concept of an arrest in Syllabus Point 1 of *State v. Muegge,* 178 W.Va. 439, 360 S.E.2d 216 (1987):

"An arrest is the detaining of the person of another by any act or speech that indicates an intention to take him into

custody and that subjects him to the actual control and will of the person making the arrest."

Accordingly, we find that the defendant was arrested around 5:30 a.m.

The next question is whether the delay at the crime scene was primarily for the purpose of obtaining a confession. At the time the defendant was told to remain in the cruiser, she had already confessed to the crime. There is no evidence in the record suggesting that the police continued to interrogate her; rather, they pursued their investigation of the crime scene. Thus, the delay between the time the defendant confessed and when she was transported from the scene of the crime was attributable to the police obtaining "relevant nontestimonial information likely to be significant in discovering the identity or location of other persons who may have been associated with the arrestee in the commission of the offense for which [she] was apprehended, [and] in preventing the loss, alteration or destruction of evidence relating to such crime." *State v. Persinger*, 169 W.Va. at 136, 286 S.E.2d at 270. (Footnote omitted). Under these facts, we find that the delay was not for the primary purpose of obtaining a confession.

This case bears some analogy to *State v. Worley, supra,* where the defendant initially gave a valid oral confession and then volunteered to take the police to the crime scene. This trip took about three hours, and we found this delay to be justified. *See also State v. Hutcheson,* 177 W.Va. 391, 352 S.E.2d 143 (1986); *State v. Humphrey, supra.*

■■■ The other delay in this case involved the drive from the crime scene to the police barracks, which took approximately one hour. Upon arrival, the defendant was processed, fingerprinted, and given her *Miranda* warnings again. She then gave a written confession complementing her earlier statement at the scene of the crime.[6] We recognized in *State v. Persinger* that the ordinary delay in transporting a suspect from the crime scene to the police station does not implicate our prompt presentment rule. Furthermore, we recognized in Syllabus Point 3 of *State v. Humphrey, supra,* that the time consumed in reducing an oral confession to written form does not violate prompt presentment principles:

"The delay occasioned by reducing an oral confession to writing ordinarily does not count on the unreasonableness of the delay where a prompt presentment issue is involved."

For the foregoing reasons, we conclude that the circuit court did not err in admitting the defendant's second written statement.

## II.

■■■ A more troubling assignment of error is the defendant's assertion that she was denied effective assistance of counsel. In support of these allegations, the defendant asserts that trial counsel failed: (1) to properly investigate evidence which might have supported the defense of a diminished mental capacity; (2) to properly investigate evidence which might have supported the defense of "battered wife syndrome"; and (3) to present any evidence in the defendant's case.

■■■ The Sixth Amendment to the United States Constitution and Article III, Section 14 of the West Virginia Constitution guarantee all criminal defendants a certain level of legal assistance. We discussed the applicable law in Syllabus Points 19 and 21 of *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974):

"19. In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virgi-

---

6. While the defendant was giving her second written statement, Desmal Walters, the defendant's alleged lover, was also brought to the police station for questioning. After the defendant's statement was transcribed, she asked the police to transport her and Mr. Walters to the magistrate's office together. Consequently, there was an additional forty-five minute delay before the defendant was taken to a magistrate. The defendant does not contend that this delay violated the prompt presentment rule.

nia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case, will be regarded as harmless error.

\* \* \* \* \* \*

"21. Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused."

The most noteworthy averment of ineffectiveness is that trial counsel failed to present any witnesses on defendant's behalf, or to offer into evidence any exhibits. According to affidavits submitted to this court, trial counsel made this decision without first investigating the availability of several potential defenses.

For example, we find particularly disconcerting trial counsel's failure to follow up on a court-ordered psychiatric evaluation. Initially, the defendant was evaluated to determine whether she was competent to stand trial and whether she suffered from a mental disease or defect that rendered her incapable of appreciating the wrongfulness of her conduct. Although the first report indicated that the defendant was competent to stand trial, the psychiatrist further opined that the defendant was borderline mentally retarded. The report did not specifically address the diminished capacity issue or whether the defendant was mentally incompetent at the time the crime was committed.

After reviewing the evaluation, defense counsel requested, and was granted, a second psychiatric evaluation to determine if the defendant was suffering from "battered wife syndrome." Counsel did not ask for any elaboration on the issues of diminished capacity[7] or insanity. Even though counsel's request was granted on February 8, 1989, and trial was scheduled to begin on February 14, 1989, trial counsel failed to ask for a continuance. It appears that the evaluation was never accomplished.

This apparent oversight is even more perplexing in light of affidavits that appellate counsel has attached to his petition. The affiants state that at the age of six, the defendant was diagnosed with neurological problems which hinder her ability to assimilate data and perceive it at a normal rate. Two of the affiants contend that they advised trial counsel of the defendant's deficiencies that they knew of two experts who were willing to testify about the defendant's defects and the effects of this handicap on her ability to comprehend. Despite this information, the record is devoid of any evidence that defense counsel attempted to investigate this possible defense.

There is also evidence that the defendant was a battered wife. The defendant and her mother swear that they were expecting to testify about the victim's alleged physical abuse of the defendant. Indeed, the defendant's mother was sequestered during the trial and was surprised to learn at the conclusion of the prosecution's case that defense counsel had decided to forego this defense entirely. Although it is doubtful whether this defense would excuse the defendant's actions,[8] certainly evidence that the victim battered the defendant would be a factor the jury could consider in its recommendation as to mercy.

In her affidavit, the defendant also states that her initial written statements to the police were coerced by physical and

---

7. In *State v. Simmons,* 172 W.Va. 590, 309 S.E.2d 89 (1983), we declined to decide whether the diminished capacity defense would be recognized in West Virginia. Nonetheless, evidence that the defendant was incapable of understanding the consequences of her actions could refute the State's contention that she had the requisite criminal intent necessary to be convicted of first degree murder.

8. *See generally State v. Steele,* 178 W.Va. 330, 359 S.E.2d 558 (1987).

verbal abuse and that she advised trial counsel that her confession was involuntary. Despite her contentions, trial counsel did not allow her to testify at either the suppression hearing or the trial. The defendant further represents that although she repeatedly requested an opportunity to testify at trial, her defense attorney refused to allow her to do so.

A further troublesome area is trial counsel's failure to appreciate that the State's theory of the case was that the defendant aided and abetted Mr. Moore, the actual perpetrator. In the written confession introduced against the defendant at trial, she stated that she had talked with Mr. Moore about some plans to kill her husband, but the plans were abstract. On the day of the murder, Mr. Moore advised the defendant that he planned to take her husband out drinking and kill him and that the murder would not involve her.

According to the defendant's confession, Mr. Moore, his wife, and the victim left the trailer court around 9:00 p.m. to go drinking, leaving the defendant at home. They came back after a couple of hours because the car had a flat tire. Another occupant of the mobile home court gave them a spare tire, but the threesome were only gone fifteen to twenty minutes when they again returned. The defendant was sitting outside her mobile home at the time and was aware that Mr. Moore and the victim had been drinking.

The victim began to argue with the defendant and then went into their mobile home. In her statement, the defendant remarked that Mr. Moore was angry with the victim because he had made sexual advances towards Mrs. Moore, and that he intended to beat up the victim. A short time later, Mr. Moore went into the mobile home. Subsequently, Mrs. Moore went into the mobile home to use the bathroom. In a few minutes, she came out and said that Mr. Moore wanted to know if the defendant wanted the victim killed. The defendant responded yes, and Mrs. Moore went back into the mobile home. A few seconds later Mrs. Moore returned with car keys and told the defendant that Mr. Moore wanted them to leave the mobile home court for thirty or forty minutes, which they did.

Besides the information contained in the defendant's confession, the State's only evidence tying the defendant to the crime was the testimony of Mrs. Moore, who stated that the initial plans to kill the victim had originated with her husband and the defendant's alleged lover, Desmal Walters. Mrs. Moore admitted that on one occasion, she heard the defendant state "we would have to get rid of him somehow." Mrs. Moore recalled going into the Wicklines' mobile home to use the bathroom and that both her husband and the victim were inside. She testified that her husband requested her to ask the defendant, "Do you want me to go ahead and finish it?" This she did. The defendant said "yes," and Mrs. Moore went back into the mobile home to tell her husband. Mrs. Moore and the defendant then drove off the hill where the mobile home was located. During their absence, Mr. Moore committed the murder.[9]

The record reveals that defense counsel offered only four instructions and a proposed jury verdict form that was rejected.[10] No instructions were offered to permit the jury to find that the defendant had only a minimal involvement with the murder.

---

9. In a separate trial, Mr. Moore was convicted of first degree murder without a recommendation of mercy.

10. Of the four offered instructions, two were withdrawn by defense counsel because they were allegedly covered by two of the State's instructions. Another instruction based on a conspiracy theory was refused by the court as being inapplicable to the facts. Consequently, only one defense instruction was given, Defendant's Instruction No. 4, which was of only marginal benefit since it dealt with events be-

fore the murder at the mobile home court. This instruction reads as follows:

"The jury is instructed that if the evidence is sufficient to permit a reasonable belief that any plan or design to murder John Wickline involving Brigitte Wickline had ended with Michael Moore's earlier refusal to murder John Wickline in the town of Milton and Michael Moore did afterward murder John Wickline for reasons unrelated to the original plan or design, then you will find Brigitte Wickline not guilty."

Such an instruction would have been permissible under Syllabus Point 3 of *State v. Haines,* 156 W.Va. 281, 192 S.E.2d 879 (1972):

> " 'Merely witnessing a crime, without intervention, does not make a person a party to its commission unless his interference was a duty, and his non-interference was one of the conditions of the commission of the crime; or unless his non-interference was designed by him and operated as an encouragement to or protection of the perpetrator.' Syllabus, *State v. Patterson,* 109 W.Va. 588 [155 S.E. 661 (1930) ]."

We cannot tell from the record what reasons trial counsel had in failing to raise these potential defenses and whether there is any rational support for his decision to present no witnesses. As we held in Syllabus Point 11 of *State v. England,* 180 W.Va. 342, 376 S.E.2d 548 (1988):

> "Where the record on appeal is inadequate to resolve the merits of a claim of ineffective assistance of counsel, we will decline to reach the claim so as to permit the defendant to develop an adequate record in habeas corpus."

*See also State v. Smith,* 181 W.Va. 700, 384 S.E.2d 145 (1989); *State v. Tesack,* 181 W.Va. 422, 383 S.E.2d 54 (1989).

With the defendant putting on no defense and receiving life without mercy, she would have been as well off to attempt a plea bargain or to plead guilty and throw herself on the mercy of the court. However, we conclude that the present record is insufficient for us to reach a fair determination as a matter of law on the merits of the defendant's claim of ineffective assistance of counsel.

Accordingly, the judgment of the Circuit Court of Wayne County is affirmed.

Affirmed.